UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Marie Keehl,                                         Case No. 3:21-cv-392

           Plaintiff,

v.                                                MEMORANDUM OPINION
                                                         AND ORDER

Animed Research
Consulting, LLC, et al.,

           Defendants.

## I. INTRODUCTION

On February 18, 2021, Plaintiff Marie Keehl filed a complaint against Defendants Animed Research Consulting, LLC and Fairfield Commons Enterprises, LLC No. 2, alleging negligence resulting from a trip and fall. (Doc. No. 1). On September 22, 2021, Animed was dismissed without prejudice by joint stipulation. (Doc. No. 21). Defendant Fairfield Commons then filed a motion for summary judgment, (Doc. No. 30), which has been fully briefed. (*See* Doc. Nos. 31 & 32). For the reasons stated below, I grant Defendant's motion for summary judgment.

## II. BACKGROUND

Keehl is the owner of two umbrella cockatoos, both of which have been patients at Animed, a veterinary clinic, since 2017. (Doc. No. 23-1 at 14-15). She had visited the clinic at least a half-dozen times prior to this occasion and had no issues entering the premises. (*Id.* at 21). On each occasion, she would make two trips into the clinic, carrying one bird at a time, directly on her arm rather than in a cage or carrier. (*Id.* at 18).

On June 29, 2020, Keehl was carrying a bird directly on her right arm. (*Id.* at 19). As she approached the entrance to Animed, she tripped and fell forward. (*Id.* at 32-33). Keehl struck her head against the door before landing on the ground, injuring her left arm. (*Id.* at 36-38). Keehl testified her left toe caught an elevated section of cement causing her to fall. (*Id.* at 20, 29, 33). She stated she never saw the elevation change, was not otherwise distracted by anything (including her bird) and is always careful about where she walks. (*Id.* at 19-20, 34).

Animed employee Jennifer Pardo, who provided first aid services to Keehl immediately following her incident, testified Keehl reported tripping over her own foot. (Doc. No. 25-1 at 13-14). Pardo recorded this recollection within a few days of the incident, stating "Per client she tripped on her foot on the way in and lost balance." (*Id.* at 38, Ex. H; *see also id.* at 17-18, 21). A second Animed employee, Jim Walasanski, heard Keehl state at the time of the incident that "she tripped over her own damn feet. Or she couldn't believe she tripped over her own damn feet." (Doc. No. 27-1 at 15, 36).

Keehl testified she tripped on the section of cement shown in Exhibit G. (Doc. No. 23-1 at 30; *id.* at 74, Ex. G).



2

Specifically, she confirmed she struck the section to the left of the measuring tape but to the right of the expansion cut extending to the door. (*Id.* at 29-32). Eric Bergman, an Animed employee who is shown holding the measuring tape in Exhibit G, testified the elevation difference of this crack was "less than an inch" and there were no significant variations in elevation in the area pictured in Exhibit G. (Doc. No. 26-1 at 27-28).

Fairfield Commons is the owner of the premises where Animed is located. (Doc. No. 24-1 at 5-6; *see also* Doc. No. 29-1). Tom Helberg, one of the members of Fairfield Commons, testified he installed the drain and cement area, shown below, after purchasing the property 20 years ago but has performed no other repair or replacement since that time. (*Id.* at 7-9; *see also id.* at 27-28, Exs. D & E). Further, he stated no remediation work was performed on the site after Keehl fell. (*Id.* at 9-10). To his knowledge, there have been no other falls in that area. (*Id.* at 10).




Helberg also provided an affidavit with additional photos of the location taken on December 16, 2021. (Doc. No. 29-1 at 2). He represented that the photos he took depicted the general conditions of the premises on the day of Keehl's incident. (*Id.* at 1). Helberg averred the maximum

3

variation in cement elevation did not exceed one inch, as shown by the photographs attached at Exhibits H through N. (*Id.* at 2; *see also* Doc. Nos. 29-9 through 29-15).



(*See, e.g.,* Doc. Nos. 29-11 & 29-15).

### III.    STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go

4

beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, "the court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party." *Pittman v. Experian Info. Solutions, Inc.,* 901 F.3d 619, 627-28 (6th Cir. 2018). But, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter.'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). Ultimately, I must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### IV. ANALYSIS

Under Ohio law, "to recover on a negligence claim, a plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of that duty proximately caused the plaintiff's injury." *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 200 (Ohio 1998). In general, a property owner has a duty "to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition." *Light v. Ohio Univ.*, 502 N.E.2d 611, 613 (Ohio 1986).

Defendant does not dispute Keehl was a business invitee and therefore owed a duty of care. (Doc. No. 30 at 10 n.1). But Defendant argues Keehl's claim is barred by the open and obvious doctrine and the two-inch rule. (*Id.* at 10). Although these exceptions are legally distinct, "they share a key characteristic insofar as they both relieve a landowner of a duty to warn of certain

5

potential hazards." *Henry v. Marriott Hotel Servs.*, 2003-Ohio-4840, 2003 WL 22110304, at *4 (Ohio Ct. App. Sept. 12, 2003).

The two-inch rule provides "that a height difference of two inches or less is insubstantial as a matter of law, unless attendant circumstances are shown to elevate the defect to an unreasonably dangerous condition." *Gatschet v. West Manor Dev. Grp., LLC*, 112 N.E.3d 543, 549 (Ohio Ct. App. 2018) (citing *Cash v. Cincinnati*, 421 N.E.2d 1275 (Ohio 1981)).

After reviewing the evidence submitted, I conclude no reasonable juror could find the defect over which Keehl tripped to be at or near two inches. As I noted above, Bergman, who personally observed the defect that Keehl alleged caused her fall, described the defect as "significantly less than an inch" and that the surrounding area did not have any other significant variations in elevation. (Doc. No. 26-1 at 27-28). Further, Helberg averred the "maximum variation in elevation is significantly less than one inch." (Doc. No. 29-1 at 2). Helberg's statements are supported by the photos of the relevant area which do not reveal any elevation changes at or near two inches. (*See* Doc. Nos. 29-8 through 29-15).

In opposition, Keehl submits two photos which she asserts create a genuine issue of fact as to the elevation change. (Doc. No. 31 at 5-6; *see* Doc. Nos. 31-6 & 31-7). While the poor quality of these photos weakens their usefulness, what dooms her claim is that Exhibit 6 does not depict the area where Keehl actually fell and thus, cannot create an issue of fact as to the height of the defect.

Despite her counsel's assertion otherwise, (*see* Doc. No. 31 at 5), Keehl's testimony explicitly identified the area where she tripped as being depicted in Exhibit G, and more specifically, as a defined area shown within that Exhibit. (*See* Doc. No. 23-1 at 29-32). Keehl testified she tripped on the area of chipped cement between the measuring tape on the right and the expansion cut on the left as depicted in Exhibit G. (Doc. No. 23-1 at 32 (Q: "And you're saying it was kind of towards

6

the middle of that where that . . . area of chipped cement is?" A: "From the middle to the right. . . Yes.")). Exhibit 6 and Exhibit G obviously depict different sections of the cement.[1]



(*Compare* Doc. No. 31-6 with Doc. No. 23-1 at 74).

Exhibit 7 does appear to depict the defect identified by Plaintiff. (*See* Doc. No. 31-7). But the photo does not show a height difference between the cement slabs approaching two inches.



---

[1] Even if the area in Exhibit 6 was the relevant section of cement, no reasonable juror could conclude that exhibit reveals a difference in elevation of at or near two inches.

This is even more apparent when combined with other photos of the relevant area. (*See* Doc. Nos. 29-8, 29-9, 29-11, and 29-15).






Based on the evidence submitted, I conclude no reasonable juror could find that the height of the defect was at or near two inches, and thus, absent attendant circumstances, Plaintiff's claim will be dismissed as a matter of law. *See Dubenion v. DDR Corp.*, 2016-Ohio-8128, 2016 WL 7232429, at *3 (Ohio Ct. App. Dec. 12, 2016) (affirming dismissal of negligence claim for trip over ½" stone paver based on application of two-inch rule).

"Attendant circumstances are factors that contribute to a fall and are beyond the injured person's control." *Gatschet*, 112 N.E.3d at 549. To make a minor defect substantial, the attendant circumstances must create "a greater than normal, and hence, substantial risk of injury." *Long v.*

8

*Speedway, LLC*, 2016-Ohio-3358, 2016 WL 3219642, at *3 (Ohio Ct. App. June 10, 2016) (citation and internal quotation marks omitted).

Plaintiff argues "the fact that widespread cracking did **not** equate to significant level changes surely constitutes an 'attendant circumstance.'" (Doc. No. 31 at 15) (emphasis in original). It appears Plaintiff is arguing attendant circumstances in the negative, i.e., the lack of significant elevation changes between cement slabs elsewhere in the relevant area misled Plaintiff into assuming there would be no significant elevation changes anywhere. But caselaw does not support this theory.

Attendant circumstances are those that "divert the attention of the pedestrian, significantly enhance the danger of the defect, and contribute to the injury." *Gatschet*, 112 N.E.3d at 550. Here, the asserted attendant circumstance – widespread cracking without significant elevation changes – is simply a restatement of the condition of the premises. It is unclear how this "circumstance" diverted Plaintiff's attention. If anything, the presence of widespread cracking would increase a reasonable person's degree of care taken when crossing the area, not reduce it. *Cf. Gates v. Speedway Superamerica, LLC,* 2008-Ohio-5131, 2008 WL 4444306, at *4 (Ohio Ct. App. Oct. 2, 2008) (open and obvious hazards, like cracks or darkness, serve as warnings in and of themselves). Regardless, Plaintiff testified that she paid attention to where she was walking and was not otherwise distracted at the time she fell. (Doc. No. 23-1 at 20-21, 34).

Further, the alleged 'circumstance' is not "unusual, unexpected, or surprising[,]" but instead is a "regularly-encountered, common, or ordinary circumstance[]." *Guthrie v. Giant Eagle, Inc.,* 2021-Ohio-1268, 2021 WL 1390312, at *5, 10 (Ohio Ct. App. March 22, 2021). Cracks in cement are a common occurrence encountered by pedestrians. *See, e.g., Jeswald v. Hutt*, 239 N.E.2d 37, 38 (Ohio 1968) (noting a person should reasonably anticipate minor imperfections on well-traveled surfaces); *Carnes v. Siferd*, 2011-Ohio-4467, 2011 WL 3890520, at *7 (Ohio Ct. App. Sept. 6, 2011) ("Ledges, cracks, and lips in sidewalks and other paved surfaces are common hazards faced by millions of

9

pedestrians each day."); *Horvath v. Walgreen Co.*, No. 3:10-cv-1684, 2012 WL 462976, at *4 (N.D. Ohio Feb. 13, 2012) (declining to find attendant circumstances where the distractions alleged were those one ordinarily expects to encounter); *see also cf. Quinn v. Montgomery Co. Educ. Serv. Ctr.,* 2005-Ohio-808, 2005 WL 435214, at *5 (Ohio Ct. App. Feb. 25, 2005) (affirming dismissal where cracking and deteriorating sidewalk was open and obvious hazard).

I conclude the "circumstance" Keehl encountered was ordinary, did not distract her, and did not create a greater than normal risk of injury. *See Helms v. Am. Legion, Inc.,* 213 N.E.2d 734, syllabus (Ohio 1966) ("[M]inor or trivial imperfections [ ] which are not unreasonably dangerous and which are commonly encountered and to be expected, as a matter of law, do not create liability . . . ."). Accordingly, Keehl has failed to meet her burden of establishing an attendant circumstance that would defeat application of the two-inch rule and, therefore, I grant Defendant's motion for summary judgment.

Because I have already found that Defendant had no duty to warn regarding the condition of the cement under application of the two-inch rule, I need not address the application of the open and obvious doctrine to this defect.

## V. CONCLUSION

For the foregoing reasons, I grant Defendant's motion for summary judgment, (Doc. No. 30), and dismiss Plaintiff's claim of negligence.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

10